**Jon GRINOLS, Plaintiff,**

v.

**Ray MABUS, Jr., et al., Defendants.**

**No. EC89–238–S–D.**

United States District Court,
N.D. Mississippi, E.D.

Sept. 4, 1992.

Wilbur Colom, Columbus, Miss., for plaintiff.

Mike Moore, Atty. Gen., R. Lloyd Arnold, Sp. Asst. Atty. Gen., Jackson, Miss., for defendants.

## OPINION

SENTER, Chief Judge.

In 1989, while a resident of this state, plaintiff, Jon Grinols, attempted to apply for a Mississippi driver's license. At that time, Mr. Grinols, who believes that a social security number is (or may become) the "mark of the beast" as prophesied in the Bible, refused to divulge his social security number,[1] and he was not allowed to take the driver's license examination.[2] *See* Miss.Code Ann. § 63–1–35 (driver's license "shall ... include the social security number of the licensee"). Subsequently, he filed the instant § 1983 action against the Governor of Mississippi and the Executive Director of the Mississippi Department of Public Safety (officially and individually), alleging violations of the First and Fourteenth Amendments to the United States Constitution and seeking declaratory, injunctive, and monetary relief. Two months later, he moved to North Carolina, where he now resides, and obtained a North Carolina driver's license.

---

1. This belief is premised on chapters 13 and 14 of the New Testament Book of Revelation. Specifically, Grinols believes that "to save his immortal soul he can not submit to the use of the 'mark' or [social security] number as a universal form of identification."

2. This was not the first occasion on which Mr. Grinols had been denied permission to take the Mississippi driver's license examination. According to Mr. Grinols, he applied for a license in 1986, within 30 days of his move to Mississippi from Minnesota, and was told that a social security number was required. At that time, he took no further action on the denial.

In November, 1990, a hearing was conducted on this matter, which is presently before the court on the parties' cross-motions for summary judgment. Defendants argue that Grinols's claims for declaratory and injunctive relief are moot and that his claim for damages is barred on immunity grounds. In response, Grinols maintains that a sufficiently live controversy exists and defendants' actions violated clearly established law.

## DISCUSSION

### I. Declaratory and Injunctive Relief

■ To satisfy Article III of the United States Constitution, an actual, ongoing case or controversy must exist. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990). Particularly,

> Article III denies federal courts the power "to decide questions that cannot affect the rights of litigants in the case before them," and confines them to resolving " 'real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' "

*Lewis*, 494 U.S. at 477, 110 S.Ct. at 1253 (citations omitted). Reduced to its most basic terms, then, a case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome of the litigation. *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). The "case or controversy" requirement exists at all stages of the litigation, and "it is not enough that a dispute was very much alive when suit was filed...." *Lewis*, 494 U.S. at 477, 110 S.Ct. at 1253. In the context of a declaratory judgment action, the controversy must be " 'such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop.' " *Rowan Cos. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (citation omitted).

■ Although several exceptions to the mootness doctrine exist, Grinols relies only upon the exception for cases which are "capable of repetition, yet evading review." *Murphy*, 455 U.S. at 482, 102 S.Ct. at 1183. In a non-class action situation (such as this), the repetition/evasion exception is limited by two important factors: (1) the challenged action must be too short in duration to be fully litigated prior to its cessation or expiration, and (2) there must be a reasonable expectation that the same complaining party will be subjected to the same action again. *Id.* Both criteria must be satisfied for the doctrine to apply. *Connell v. Shoemaker*, 555 F.2d 483, 486 n. 3 (5th Cir.1977).

■ The first factor of this two-part test is satisfied if "the challenged action lasts for so short a time that it inevitably expires before review is possible...." *ITT Rayonier Inc. v. United States*, 651 F.2d 343, 346 (5th Cir.1981). The second requirement is fulfilled if there is a reasonable expectation or demonstrated probability, and not a mere physical or theoretical possibility, that the same controversy will recur involving the same complainant. *Murphy*, 455 U.S. at 482, 102 S.Ct. at 1183. *See Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973) ("Pregnancy provides a classic justification for a conclusion of nonmootness. It truly could be 'capable of repetition, yet evading review.' ").

■ The court is of the opinion that this case does not fit within the repetition/evasion exception to the mootness doctrine. Several factors lead to this conclusion. First, Mr. Grinols is no longer a Mississippi resident (and was not at the time of the hearing) and thus, without regard to his unwillingness to divulge his social security number, is not eligible for a Mississippi driver's license. Second, to be affected in the future by the state's social security number requirement, several events must transpire: (1) Grinols must move from North Carolina; (2) he must move back to Mississippi or to another so-called "com-

pact" state[3]; and (3) he must be prevented from explaining the denial of his license application in Mississippi. Although it is undisputed that Grinols has in the past moved approximately every three years, his argument against mootness in this regard amounts to a request for advice as to "what the law would be upon a hypothetical state of facts," or with respect to " 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Lewis*, 494 U.S. at 479–80, 110 S.Ct. at 1254. In other words, the threat of injury is " 'two steps removed from reality. This [makes] the recurrence ... so remote and speculative that there [is] no tangible prejudice to [Grinols's] existing interests.' " *ITT Rayonier*, 651 F.2d at 345. And finally, the challenged action is not so shortlived that it will forever evade review. In fact, Grinols had the opportunity to, but did not, challenge the statute in 1986, when he was first denied a Mississippi license and three years before he moved to another state. In the usual course of litigation, three years is sufficient time, with the aid of vigorous advocacy, to see a case through to appellate review. By his own actions, the most recent move to North Carolina renders moot these two bases for relief.

As Grinols's requests for injunctive and declaratory relief are moot, defendants are entitled to summary judgment on those claims. *See Leahy v. District of Columbia*, 833 F.2d 1046, 1047 n. 2 (D.C.Cir.1987) (on identical facts, court held plaintiff's move to another state mooted request for injunctive relief).

## II. Monetary Relief

■ Although Grinols's claims for injunctive and declaratory relief are moot, his request for monetary damages against the defendants in their individual capacities is not. *See University of Texas v. Camenisch*, 451 U.S. 390, 394, 101 S.Ct. 1830, 1833, 68 L.Ed.2d 175 (1981) (case may re-main alive although some issues are moot); *see also Leahy*, 833 F.2d at 1047 n. 2 (although move to another state rendered claim for injunctive relief moot, claim for damages survived). Defendants do not urge to the contrary. Rather, they focus on whether Grinols has adequately pled any facts sufficient to overcome their qualified immunity.

■ In response, Grinols concentrates on the "clearly established" nature of religious freedom and the liability of these defendants for the actions of their employees. This latter argument tracks the following course: The Governor of Mississippi appointed the Executive Director of the Department of Public Safety, who in turn hired the employees of the driver's license bureau where Grinols applied for a license. Because the executive director was "under the direct authority, control and supervision" of the governor, and the driver's license employees were "under the direct authority, control and supervision" of the executive director, then, according to Grinols, under

> traditional agency law, their superiors are responsible for their action in denying Plaintiff Grinols his driver's license because of his refusal to provide his social security number. Thus, despite the lack of personal contact, Defendants are individually liable for actions of their employees when those employees are acting under Defendants' authority, control and supervision.

The United States Supreme Court has expressly rejected this argument. *See Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978) (respondeat superior may not serve as basis for imposing § 1983 liability). Accordingly, defendants are entitled to summary judgment on this point also.

---

**3.** According to Grinols,

Based on the Social Security number of the person, "compact" states trade information on drivers who seek licenses in their respective states or who commit traffic violations in a non-resident state.

When a non-resident driver becomes a resident of a "compact" state, he must within thirty (30) days apply for a driver's license in the resident state. Every "compact" state has similar form and application requirements to Mississippi's....

## CONCLUSION

Because plaintiff's claims for injunctive and declaratory relief are moot and his claim for damages against defendants in their individual capacities is barred as a matter of law, the court finds that defendants' motion for summary judgment is well taken and is granted and that this cause is dismissed with prejudice.